# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ZICKES | ) | CASE NO. |
| 4607 Prestwick Crossing | ) | |
| Westlake, Ohio 44145 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| CUYAHOGA COUNTY | ) | |
| 2079 EAST NINTH STREET | ) | ***COMPLAINT*** |
| CLEVELAND, OH  44115 | ) | |
| | ) | **(JURY DEMAND ENDORSED** |
| -and- | ) | **HEREON)** |
| | ) | |
| CUYAHOGA COUNTY EXECUTIVE | ) | |
| 2079 EAST NINTH STREET | ) | |
| CLEVELAND, OHIO 44115 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| LIEUTENANT BRYAN SMITH | ) | |
| c/o Cuyahoga County Sheriff's Department | ) | |
| 1215 West Third Street | ) | |
| Cleveland, Ohio 44113 | ) | |
| In his Official and Individual Capacity | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| SERGEANT MICHAEL CARROLL | ) | |
| 492 Oaknoll Drive | ) | |
| Amherst, Ohio 44001 | ) | |
| In his Official and Individual Capacity | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| LUCY RODRIGUEZ | ) | |
| 39040 Bridle Court | ) | |
| Avon, Ohio 44011 | ) | |
| In her Official and Individual Capacity | ) | |
| | ) | |
| Defendants. | | |

1

## I.  PROLOGUE OVERVIEW

This case involves the forced, early retirement of former Cuyahoga County Deputy Sheriff Joseph Zickes ("Zickes") after 20 years of outstanding service to Cuyahoga County because he engaged in protected union activities.  This case also involves the severe mental, emotional and physical distress caused to Zickes due the outrageous conduct of the defendants that should not be tolerated in a civilized society.

## THE PARTIES

1.      Zickes is an adult male over the age of forty (40) years old, a United States of America citizen who lives Westlake, Ohio.

2.      Zickes began his career as a deputy sheriff on August 15, 1994.

3.      Defendant Cuyahoga County, Ohio is a political subdivision organized and existing under Ohio law.  At all times relevant to this *Complaint*, Cuyahoga County employed, directly or indirectly, one, some and/or all of the other Defendants.

4.      Lieutenant Bryan Smith is and at all relevant times was a Lieutenant in the Cuyahoga County Sheriff's Department employed by Cuyahoga County.

5.      Sergeant Michael Carroll is and at all relevant times was a Sergeant in the Cuyahoga County Sheriff's Department employed by Cuyahoga County.

6.      Lucy Rodriguez is and at all relevant times was an individual employed by Cuyahoga County in the Juvenile Justice Center ("JJC").

7.      All Defendants are sued in their official and individual capacity.

## II. THE FACTUAL BASIS FOR THE *COMPLAINT*

### [A] JURISDICTION

8.      Those allegations set forth in the preceding paragraphs and the prologue are incorporated herein by reference as if fully rewritten;

9.      This action is brought pursuant to 42 USC §§ 1983, 1985, 1986, 1988 and/or the Fourteenth Amendment to the United States Constitution;

10.     Jurisdiction is properly founded pursuant to 28 USC §§ 1333 and/or 1343 for a cause of action arising out of the violation of Zickes' First, Fourth, Fifth, Sixth , Eighth and/or Fourteenth Amendments of the United States Constitution, and/or those statutes, laws and/or constitutional provisions previously set forth herein and/or which may apply and are subsequently identified; and/or,

### [B] VENUE

11.     The acts attributed to the Defendants, one, some and/or all, occurred in the City of Cleveland, Ohio, the County of Cuyahoga and the State of Ohio.  The Ohio Northern District Court, located in Cleveland, Ohio is the proper venue for the present suit brought to this Court by Zickes.

### [C] THE ALLEGATIONS

### COUNT 1:    VIOLATION OF FIRST AMENDMENT PROTECTED UNION ACTIVITIES

12.     All preceding paragraphs and allegations previously set forth in the *Complaint*, and the prologue, are incorporated herein by reference as if fully rewritten.

13.     On October 1, 2011, Zickes was assigned to the new Juvenile Justice Center ("JJC") located at 9300 Quincy Road, and he was assigned to a permanent floor, the 8th floor.

14.     At this time, Lieutenant Bryan Smith ("Smith") was in charge of the Ohio Patrolmen's Benevolent Association members (deputy sheriffs) who were assigned to the Juvenile court, including Zickes.

15.     In or about November 2011, Zickes was elected steward of the Ohio Patrolmen's Benevolent Association ("OPBA"), Sheriffs' Deputy Bargaining Unit.

16.     Prior to being elected a steward, Zickes worked as number of years as a detective in the Cuyahoga County Sheriff's Department, without incident or discipline.

17.     While Zickes was an elected steward, Smith began pressuring Zickes to lobby OPBA bargaining unit members' to transfer their sick time to his friend Lieutenant Miguel Carabello, a member of the lieutenants' bargaining unit who had no more sick time available to him.

18.     During this time, Zickes received numerous complaints from the OPBA members that they felt pressure from Smith to donate their sick time to Lieutenant Carabello.

19.     Zickes challenged Smith's behavior seeking the sick time donations on behalf of the OPBA members.

20.     Zickes refused to lobby the OPBA members to donate their sick time to the Lieutenant's bargaining unit because of the high likelihood for abuse by the Lieutenants.

21.     Zickes' refusal to lobby the OPBA members into donating their sick time to Lieutenant Carabello protected the public because it protected the OPBA members' and their families from being intimidated into giving their sick time to an undeserving supervisor without fear of being demoted, reassigned to a less favorable job, or being prevented from getting necessary training to perform their duties on behalf of the public.  Zickes' union representation

4

also prevented an abuse of the use of the County's sick time policy.  Zickes' goal was to protect

the public by keeping the members' morale high while they served the public's interests.

22.     After Zickes refused to lobby the OPBA members regarding the sick time

donations, Lieutenant Smith threatened to indict any deputy sheriff who continued to park at the

Juvenile Court for free, and Zickes communicated this to the OPBA members.

23.     Lieutenant Smith's threat directly affected the OPBA members' morale and how

they served the public.

24.     Shortly after this, Lieutenant Smith, in front of other deputies (OPBA members),

at a roll call session, publicly berated Zickes for accusing Lieutenant Smith of threatening to

indict any deputy Sheriff who parked for free at the new Juvenile Court.

25.     Lieutenant Smith denied Zickes' accusation regarding the free parking, claiming

the order came for Cuyahoga County Executive Ed FitzGerald, but Smith could not provide

proof of such an order, despite Zickes' demand for proof.

26.     Shortly after the free parking issue, Smith communicated to another supervisor

that Smith had video recordings that showed the Zickes was not wearing his collar brass

correctly and he would write up Zickes.

27.     Shortly after this incident, on January 3, 2012, and with no justification, Smith

continued his petty disparagement of Zickes by ordering Zickes and all members of the OPBA

who were assigned to the Juvenile Court to wear a tie with his uniform, rather than the dickie

collar.

28.     On January 23, 2012, Lieutenant Bryan Smith falsely accused Zickes of arriving

late to work and threatened to have Zickes administratively suspended for 5 to 10 days.

29.     On February 6, 2012, Zickes was appointed acting director of the OPBA Sheriff's Deputy Bargaining Unit ("SDBU");

30.     Also, on February 6, 2012, Lieutenant Smith ordered Sergeant Robert Venables to reassign Zickes from his permanent floor 8th floor position to the Juvenile Justice Center ("JJC") arraignment room.

31.     On February 7, 2012, Zickes personally spoke with former captain Frank Bova ("Bova") about Smith's interference with Zickes' union activities; Zickes asked Bova for help to stop Smith's behavior or the union would file an unfair labor practice complaint.  Bova did not stop Smith's anti-union actions directed at Zickes..

32.     As a direct and proximate result of Smith's interference with Zickes' union activities, Zickes, on behalf of the OPBA negotiating committee successfully negotiated Article 7, Section 6 of the 2011-2014 Deputy Sheriff's Contract with Cuyahoga County that stated "no supervisor shall materially interfere with union activity performed in accordance with the foregoing rules or the administration of this agreement."

33.     On April 3, 2012 Smith reassigned Zickes again, from the arraignment room to the sixth floor of the JJC.

34.     On April 12, 2012 Smith initiated an official sheriff's investigation against Zickes into the use of the OPBA Union bulletin board, located in the roll call room of the JJC because Zickes handwrote a note on the memo on the bulletin board that implied Smith was targeting OPBA union members;

35.     On or about September 2012, Lieutenant Carabello initiated an investigation into Zickes' use of county gas card, with no finding of wrongdoing.

36.     As though the blatant sheriff's investigations were not enough, Smith looked outside his chain of command and Smith initiated an official Inspector General's investigation through the Cuyahoga County Executive branch that is in charge of ethics violations, complaining that Zickes was harassing Smith's fiancé Lucy Rodriguez who worked at the JJC on the 8th floor, a floor that Zickes was removed from by Smith.

37.     As a result of this investigation, Zickes was subjected to a lengthy investigative process to clear his name, and he was compelled to appear for an interrogation before the IG's office under threat of termination.

38.     Zickes was cleared of any wrongdoing related to Lucy Rodriguez.

39.     Through information and belief, Lieutenant Carabello's investigation was in retaliation for Zickes' union representation in defeating the OPBA members' sick time donations.

40.     During this time, the OPBA also represented the Cuyahoga County Sheriff's Department sergeants and lieutenants.

41.     On October 12, 2012 Zickes circulated a signed petition from the OPBA  elected Leadership asking the OPBA Executive Director, Jeff Pedicino, to sever its ties with the Sheriff's Lieutenants bargaining unit because  of Smith's  interference with the OPBA Sheriff's deputies bargaining unit's member's union activity..

42.     Examples of the union activity interference by the Lieutenants, including Smith, included, but were not limited to Smith placing sick time donation requests in the OPBA members' mailboxes; denying training; threatening and initiating investigations on those members Smith felt were sympathetic to Zickes' OPBA leadership.

7

43.     In January 2013, Smith prohibited Zickes from attending a member's grievance against Smith's friend Sergeant Carroll related to an inappropriate sexual comment made to an OPBA female member; a separate grievance was filed for this interference.

44.     Zickes initiated the grievance regarding Sergeant Carroll's conduct.

45.     In February 2013, Sergeant Carroll issued an order that stated that any deputy who was more than 2 hours late due to a level 1 snow storm could not use comp time; Zickes called the OPBA attorney, Max Reiker to complain about this order and the county executive reversed this order.

46.     Shortly after the comp time issue, Sergeant Carroll told Zickes that Zickes is under an official sheriff's investigation for leaving his lunch bag over night in the sixth floor jury vestibule room.

47.     On March 20, 2013, Sergeant Carroll prevented Zickes from attending a labor management meeting, until Zickes again called OPBA attorney Max Reiker to complain that Sergeant Carroll was again interfering with union activity.

48.     Zickes did attend the labor management meeting and he again circulated the petition —this time, to Sheriff Bova-- from the deputy sheriff's requesting that the OPBA sever its ties to the Sheriff's department lieutenants because Lieutenant Smith grossly abused his authority by targeting, harassing, and intimidating the deputy sheriffs.

49.     Smith's targeting, harassing, and intimidating the deputy sheriffs because they supported Zickes as union director lowered their morale and negatively impacted the deputies from properly serving the community.

50.     Captain Bova knew of the anti-union activity but he took no corrective action related to Smith's behavior;

51.     On March 29, 2013, Sergeant Carroll refused to allow Zickes to attend LIDAR training, which is relevant to the position of Deputy Sheriff.

52.     Through information and belief, Sergeant Carroll's conduct was in direct retaliation against Zickes' union leadership.

53.     On April 24, 2013 Sergeant Carroll ordered Deputy Brozonski be moved from the fifth floor to the seventh floor of the JCC.  Zickes threatened a grievance against Sergeant Carroll and the order was rescinded.

54.     As a result of the constant targeting and harassment because of Zickes' engagement in union activities, as well as the outrageous conduct of the Defendants' herein, Zickes suffered severe emotional distress and mental anguish, and physical pain and suffering.

55.     In addition, to the above, Zickes was forced to retire early on November 30, 2014, and he lost out on approximately $172,000.00 as his cost of early retirement.

## PRAYER FOR RELIEF

**WHEREFORE,** Zickes has suffered lost income, severe mental distress and extreme anxiety, and has been forced to expend out-of-pocket money in order to protect and/or defend himself.

Zickes prays for actual and punitive damages in excess of **Twenty-Five Thousand Dollars ($25,000.00)**, or such other relief as is deemed just and proper, punitive damages as set by the Court, and/or jury, and reasonable attorney fees currently incurred to date, and for reasonable attorney's fees to be incurred hereafter.

**WHEREFORE**, Zickes under all counts of the *Complaint*, request the following relief:

A.     Grant Injunctive and prospective relief ordering the Defendants to require their employees and officers to undergo additional training, education and supervision

9

so that they will be better prepared to act in a reasonable manner, in accordance with law, and to avoid further civil rights violations;

B.      Award Zickes' compensatory and punitive damages in an amount to be determined at trial against each defendant jointly and severally;

C.      Award Zickes his attorney's fees and costs to prosecute this case;

D.      Award such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ Brett Mancino_____
BRETT M. MANCINO (0071148)
MANCINO CO., L.P.A.
75 Public Square, Suite 1016
Cleveland, Ohio 44113
(216) 621-1742 Tel.
(216) 621-8465 Fax
bmancino@mancino-law.com
Attorney for Joseph Zickes

## JURY DEMAND

Zickes demands a trial by jury to the maximum number of jurors allowed by law for all claims so triable.

Respectfully Submitted,

/s/ Brett Mancino_____
BRETT M. MANCINO (0071148)\

## PRECIPE:

To the Clerk of Courts:

     Please serve each of the individuals and/or entities listed above through proper legal service.

          Respectfully Submitted,

          /s/ Brett Mancino_____
          BRETT M. MANCINO (0071148)
          MANCINO CO., L.P.A.
          75 Public Square, Suite 1016
          Cleveland, Ohio 44113
          (216) 621-1742 Tel.
          (216) 621-8465 Fax
          bmancino@mancino-law.com