```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                             :
JOSEPH ZICKES,                               :
                                             :   CASE NO. 1:15-CV-1865
                Plaintiff,                   :
                                             :
vs.                                          :   OPINION & ORDER
                                             :   [Resolving Docs. 51, 52, 53, 57]
CUYAHOGA COUNTY et al.,                      :
                                             :
                Defendants.                  :
                                             :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 11, 2015, Plaintiff Joseph Zickes filed a complaint against Defendants Bryan Smith and Michael Carroll.[1] He alleges violations of his First Amendment rights. Plaintiff Zickes filed an amended complaint on November 3, 2015.[2]

On July 18, 2016, Plaintiff filed a motion for summary judgment against Defendant Bryan Smith.[3] Defendants Smith and Carroll filed cross motions for summary judgment the same day.[4] Defendant Smith also filed a motion to exclude supporting evidence in Plaintiff's summary judgment motion.[5]

For the reasons below, this Court **GRANTS** Defendant Smith's motion to exclude testimony**, DENIES** Plaintiff Zickes' motion for summary judgment, and **GRANTS** Defendant Smith's and Defendant Carroll's motions for summary judgment.

---

[1] Doc. 1. Plaintiff Zickes' complaint also included Fourth, Fifth, Sixth, Eighth, and/or Fourteenth Amendment claims. All that remain are Plaintiff's First Amendment claim and related constructive discharge claim under the First Amendment and 42 U.S.C. § 1983. Doc. 36. Plaintiff's complaint also named Cuyahoga County, Cuyahoga County Executive, and Lucy Rodriguez as defendants. These defendants have since been dismissed. Docs. 36, 49.
[2] Doc. 15.
[3] Doc. 51. Defendant Smith opposed. Doc. 58. Plaintiff replied. Doc. 59.
[4] Docs. 52, 53. Plaintiff opposed. Doc. 56. Defendants jointly replied. Doc. 60.
[5] Doc. 57. Plaintiff opposed. Doc. 61. Defendant Smith replied. Doc. 62.

Case No.15-CV-1865
Gwin, J.

## I.     BACKGROUND

Plaintiff Zickes formerly worked for the Cuyahoga County Sheriff's Department. Zickes claims Defendants forced him into early retirement after he engaged in protected speech associated with union activities.

Plaintiff Zickes was assigned to the Juvenile Justice Center ("JJC") in October 2011.[6] Defendant Lieutenant Bryan Smith was in charge of the JJC at that time.[7]

In November 2011, Zickes was elected steward of the Ohio Patrolmen's Benevolent Association ("OBPA"), the bargaining unit for the Sheriff Department deputies.[8]

According to Zickes, Defendant Smith then began pressuring Zickes to lobby OPBA bargaining unit members to transfer their sick time to Lieutenant Miguel Carabello, a sick member of the lieutenants' bargaining unit who had used all of his sick time.[9] Zickes refused to donate his own sick time or lobby others to do so.

Defendant Smith responds that he was unaware of Zickes' involvement with the sick-time donation bargaining, as a leader or otherwise, and that he did not know of Zickes' personal position on the issue.[10] Zickes only told Smith that the union was against sharing sick time.[11]

In response to Plaintiff Zickes' opposition to sick-time donation, Zickes claims that Defendant Smith began to retaliate against and harass him.

*Alleged Retaliation and Adverse Employment Actions*

Among other incidents, Zickes says that in January 2012, Defendant Smith singled him out and reprimanded him for arriving late to work.[12] Smith denies singling Zickes

---

[6] Doc. 51 at 2.
[7] Doc. 53 at 1.
[8] Doc. 15 ¶ 14.
[9] *Id.* at ¶ 18.
[10] Doc. 58 at 2.
[11] Doc. 53 at 2.
[12] Doc. 51 at 5.

Case No.15-CV-1865
Gwin, J.

out,[13] and states that he told Zickes that Zickes needed to clock in and arrive on time.[14]

In March 2012, Plaintiff Zickes was disciplined for writing Defendant Smith's name beneath the word "target" on a memo posted on the union bulletin board.[15] Union Director Deputy Jerome Wilcoxson wrote the memo, which appears to address uniting deputies and responding to "supervisors that like to 'target' Deputies" with a more productive approach.[16]

Plaintiff also posted a Plain Dealer article on the bulletin board, entitled "*Arrogant Boss? Sit Tight, He'll Get His, Research Shows*." Plaintiff received a written reprimand and was subject to suspension for these acts. Although Plaintiff states that he "faced punishment up to a 30-day suspension" [17] for the incident, it does not appear that he was suspended. Instead, Plaintiff Zickes ultimately received oral counseling for his behavior.[18]

Defendant Smith argues that Zickes' notation distorted Wilcoxson's message, and that apart from photographing the bulletin board and forwarding the photos to an independent detective, he played no role in Zickes' discipline.[19]

Plaintiff Zickes was also reprimanded for using JJC jury rooms to eat lunch.[20] Defendant Smith states that after Defendant Sergeant Michael Carroll told all deputies not to use jury rooms for personal use, Plaintiff Zickes continued to do so.[21] Defendant Carroll reported Zickes, but he was not disciplined.[22]

---

[13] Doc. 58 at 4.
[14] Doc. 53 at 2.
[15] Doc. 51 at 5.
[16] *See id.* at 7.
[17] *Id.* at 5.
[18] Doc. 53 at 4.
[19] Doc. 58 at 4-6.
[20] Doc. 51 at 8.
[21] Doc. 53 at 4.
[22] *Id.*

3

Case No.15-CV-1865
Gwin, J.

In August 2012, the County Sheriff's office investigated Zickes for misusing his gas card.[23] While Zickes claims he was singled out, Defendant Smith argues that all gas cards assigned to the Sheriff's Department were audited at that time.[24] When Zickes moved from the sheriff's office to the JJC, he was no longer entitled to a gas card.[25] The County thus requested an audit to ensure Zickes was not using the card, and took no other steps after the audit showed no use of the card.[26]

In September 2012, a JJC employee named Lucy Rodriguez initiated an Inspector General investigation against Zickes for harassing her.[27] Rodriguez was Defendant Smith's girlfriend, and Zickes claims that Smith approved and encouraged her complaint against Zickes.[28] Zickes further claims that the Inspector General investigation was baseless, took longer than necessary, and concealed hidden motives.[29]

Defendant Smith admits that he quickly reviewed Rodriguez's complaint as a favor to her, but did not suggest or encourage her to file with the Inspector General.[30] Smith further states that he has nothing to do with how long an independent agency's investigation takes.[31]

In January 2013, Plaintiff initiated a grievance against Defendant Carroll for allegedly making inappropriate comments to a female union member.[32] Defendants Smith and Carroll are friends, and Zickes argues that Smith would not initially allow Zickes to attend the grievance hearing against Carroll.[33] However, Zickes admits that he was allowed to attend the hearing.[34]

---

[23] Doc. 51 at 9.
[24] Doc. 58 at 6-7.
[25] *Id.*
[26] *Id.*
[27] Doc. 51 at 9.
[28] *Id.*
[29] *See id.*
[30] Doc. 58 at 7-8.
[31] *Id.* at 8.
[32] Doc. 15 at 8.
[33] *Id.*
[34] Doc. 56 at 10.

4

Case No.15-CV-1865
Gwin, J.

In February 2013, Defendant Carroll did not immediately approve use of compensatory time for late arrivals caused by a snow storm.[35] Carroll argues that he simply waited for approval from the County Executive before making a decision, and approved the use of compensatory time for Zickes and others later the same day.[36]

In March 2013, Defendant Carroll changed deputies' hours from 8:00 am – 4:00 pm to 9:00 am – 5:00 pm. Zickes claims this change was in retaliation for his circulating petitions requesting that lieutenants such as Defendant Smith be removed from the union.[37] Carroll argues that the change was due to budget choices and was also widely applicable to many deputies.[38]

In November 2014, Plaintiff Zickes decided to retire early. He says he retired early due to stress from the alleged retaliation and harassment.[39]

*Procedural History*

On September 11, 2015, Plaintiff Zickes filed a complaint against Defendants Bryan Smith and Michael Carroll.[40] On July 18, 2016, he filed a motion for summary judgment on his First Amendment and constructive discharge claims against only Defendant Bryan Smith.[41] Defendants Carroll and Smith both filed cross motions for summary judgment the same day.[42]

In his motion for summary judgment, Plaintiff Zickes argues that his refusal to lobby the bargaining unit to transfer sick time is a matter of public concern and therefore receives certain protections under the First Amendment.[43] In support of that proposition, Plaintiff cites to a sworn

---

[35] Doc. 15 at 8.
[36] Doc. 52 at 10.
[37] Doc. 56 at 10.
[38] Doc. 52 at 11.
[39] Doc. 15 at 10.
[40] Doc. 1. Zickes amended his complaint on November 3, 2015. Doc. 15.
[41] Doc. 51. Defendant Smith opposed. Doc. 58. Plaintiff replied. Doc. 59.
[42] Docs. 52, 53. Plaintiff opposed. Doc. 56. Defendants Smith and Carroll filed a joint reply. Doc. 60.
[43] Doc. 51 at 12-17.

5

Case No.15-CV-1865
Gwin, J.

affidavit by Cleveland Police Patrolmen's Association President Robert Beck as expert testimony.[44] Defendant Smith has filed a motion to exclude Robert Beck's testimony.[45]

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[46] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[47] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings— showing a triable issue.[48] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[49] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[50]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless the record before the court directly contradicts that version.[51] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[52]

---

[44] *Id*. at 15.
[45] Doc 57.
[46] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[47] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[48] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[49] *Id.* at 586.
[50] *Killion*, 761 F.3d at 580 (internal citation omitted).
[51] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[52] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

6

Case No.15-CV-1865
Gwin, J.

## III. DISCUSSION

### A. Plaintiff Zickes is not entitled to summary judgment.

#### a. Plaintiff Zickes' speech is not of public concern.

Plaintiff Zickes argues that he was retaliated against in violation of his First Amendment rights. Zickes argues that (1) his speech concerning donation of sick time and (2) his union bulletin board postings are both matters of public concern.[53] If the speech is of public concern, Plaintiff argues that Defendants violated his First Amendment rights when they retaliated against him for said speech.[54] Alternatively, Defendants Smith and Carroll argue that Plaintiff's speech concerns internal personnel matters.[55] This Court agrees with Defendants.

In order to make out a First Amendment retaliation claim, an employee plaintiff must show that "(1) he engaged in constitutionally protected activity, (2) defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the activity, and (3) the adverse action was motivated, at least in part, as a response to his exercise of his constitutional rights."[56] To qualify as constitutionally protected speech, a public employee must speak "as a citizen on a matter of public concern."[57] Whether a public employee's speech is a "matter of public concern . . . is a matter of law for the court to decide."[58] If the speech is not a matter of public concern, "the employee's claim must fail."[59]

Speech is of "'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of

---

[53] Doc. 51 at 14-16.
[54] *Id.* at 17.
[55] Doc. 53 at 9-13.
[56] *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 248 (6th Cir. 2007) (citing *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir.2004)).
[57] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).
[58] *Van Compernoll*, 241 F. App'x at 249 (citing *Garcetti*, 547 U.S. at 418).
[59] *Id.*

7

Case No.15-CV-1865
Gwin, J.

their government."[60] Matters of public concern "are to be contrasted with internal personnel disputes or complaints about an employer's performance."[61] To determine whether speech is of public concern, courts can consider "the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker."[62] "[T]he proper inquiry is *not* what might be 'incidentally conveyed' by the speech . . . references to an arguably public matter do not elevate the speech to a matter of 'public concern' where the 'focus' or 'point' of the speech advances only a private interest."[63]

As addressed below, neither category of Plaintiff Zickes' speech is of public concern.

### i. Plaintiff's speech concerning sick time donation is not of public concern.

The Court first addresses whether Plaintiff's affidavit from Cleveland Police Patrolmen's Association President Robert Beck[64] is admissible as expert testimony. Defendants argue that Beck offers inadmissible expert testimony as to whether Plaintiff's speech regarding the donation of sick time is of public concern.[65] This Court agrees.

Federal Rule of Civil Procedure 56 provides that affidavits supporting or opposing summary judgment must be made on personal knowledge and set forth facts that would be admissible in evidence.[66]

---

[60] *Van Compernolle*, 241 F. App'x at 249 (citing *Farhat,* 370 F.3d at 590).
[61] *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001).
[62] *Van Compernolle*, 241 F. App'x at 249 (citing *Farhat,* 370 F.3d at 592).
[63] *Id*. (citing *Farhat,* 370 F.3d at 592-93) (emphasis in original).
[64] Doc. 51-1. Beck opined: "It is alleged that Zickes, in refusing to allow Lieutenant Bryan Smith to coerce, threaten, or intimidate Zickes and other members of the OPBA Sheriff Deputy Union to donate their sick time to the Lieutenants concerned and protected the public because it prevented the potential for retaliation against individual deputies and the deputies' families by keeping in place for these deputies an adequate amount of sick time in case of an on-the-job injury. For example, if a deputy was coerced to donate his sick time and he got severely injured on the job, 30 days after his sick time expired, he is no longer on paid status and he is without that sick time he donated. Now he and his family's medical benefits would be severed from the County. Then, at that point in time, the deputy has to rely on the public to pay for any unexpected health emergencies for him or his family. The deputy, his family, and the public would be directly affected by this sick time trading." *Id*. at ¶15.
[65] Doc. 57.
[66] Fed. R. Civ. P. 56(c)(2).

8

Case No.15-CV-1865
Gwin, J.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.[67] Under Rule 702, testimony based on specialized knowledge is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."[68] Additionally, the testimony must be (1) "based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) the witness must have "applied the principles and methods reliably to the facts of the case."[69] To qualify as an expert witness, the expert must be qualified "by knowledge, skill, experience, training, or education."[70]

Here, Mr. Beck's testimony is not supported by "sufficient data or facts." He admits that he relies only on Plaintiff's first amended complaint and conversations with Plaintiff and his counsel in forming his opinion.[71] Further, Mr. Beck has not demonstrated use of "reliable principles and methods" or application of any such methods to the facts of this case.

Perhaps more importantly, Mr. Beck makes a legal as opposed to factual conclusion. He states that if a deputy fails to maintain adequate sick time and suffers an injury, the public may be forced to pay for his or her care.[72] Thus, according to Mr. Beck, the donation of sick time "concern[s] and protect[s] the public," meaning it is a matter of public concern.[73] Plaintiff Zickes also provides "[d]eclarations of 13 deputies who [have] unequivocally state[d] that Zickes was protecting the public and his union association was a matter of public concern."[74]

---

[67] Fed. R. Evid. 702.
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] Doc. 51-1 ¶7-8.
[72] *Id.* at ¶15.
[73] *Id.*
[74] Doc. 61 at 3.

9

Case No.15-CV-1865
Gwin, J.

Mr. Beck's and 13 other deputies' opinions are inadmissible on this issue. Experts are not entitled to give legal conclusions; whether Plaintiff Zickes' speech is a matter of public concern is a legal question.[75] The Court therefore does not consider Mr. Beck's testimony in its analysis.

This Court finds that Plaintiff Zickes' speech is not of public concern. His opposition to donating sick time—and any efforts to convince other deputies not to donate—concern the internal operation of the Sheriff's department. Zickes argues that because his position on sick time donation is union-related and that he meant to "protect[] the broader deputies and public," the public concern test is satisfied.[76] This argument fails.

Under Sixth Circuit law, "an employee's speech, activity, or association, merely because it is union-related, does not touch on a matter of public concern as a matter of law."[77] Attempting "to provide a voice for [] fellow officers in department operations"[78] does not catapult an opinion to the level of constitutionally protected speech.

Plaintiff Zickes also relies on a letter from Human Resources Director Elise Hara in support of his argument.[79] In her letter, Hara stated that the "Sheriff's Department is the caretaker of the public's safety . . . [and they are to] commit[] themselves to the efficient and effective of [sic] delivery of safety services."[80] Zickes argues that this letter acknowledges that "everything the sheriff's deputies [do] affect[s] the public."[81]

Ms. Hara's statement does not support Plaintiff. First, the statement is taken out of context. The statement was part of a disciplinary letter—Ms. Hara was not purporting to speak to whether Zickes' speech concerns a matter of public import.

---

[75] *Van Compernoll*, 241 F. App'x at 249 (citing *Garcetti*, 547 U.S. at 418).
[76] Doc. 51 at 16-17.
[77] *Van Compernolle*, 241 F. App'x at 250 (citing *Boals v. Gray, 775 F.2d 686, 693 (6th Cir.1985)*).
[78] *Id*.
[79] Doc. 51 at 17.
[80] Doc. 51-18.
[81] Doc. 56 at 8.

10

Case No.15-CV-1865
Gwin, J.

Second, Ms. Hara's statement, as construed by Plaintiff Zickes, makes a legal conclusion. It is similar to the Beck affidavit that this Court has ruled inadmissible.

Lastly, this statement is in direct opposition to the law. Not everything a public employee does or says is of public concern. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark . . . would plant the seed of a constitutional case."[82] The Supreme Court has squarely rejected this possibility.[83]

Thus, Zickes' speech regarding sick time donation is not a matter of public concern.

### ii. Plaintiff's postings on the union bulletin board are not of public concern.

For much the same reason, Plaintiff Zickes' bulletin-board speech is not of public concern. Again, Zickes argues that his written comments and the article he posted are union-related and therefore of public concern. The law says otherwise.[84]

Regardless, Plaintiff Zickes' "communicative purpose"[85] appears to be expressing his personal dissatisfaction with Defendant Smith, not advancing union issues.[86] And "where the 'focus' or 'point' of the speech advances only a private interest," a tangential relationship to "an arguably public matter" does not make the speech of public concern.[87]

---

[82] *Connick v. Myers*, 461 U.S. 138, 149 (1983).
[83] *Id*.
[84] *Van Compernolle*, 241 F. App'x at 250 (citing *Boals*, 775 F.2d at 693) (finding that employee speech is not necessarily of public concern "merely because it is union-related")).
[85] *Van Compernolle*, 241 F. App'x at 249 (citing *Farhat,* 370 F.3d at 592).
[86] Union Director Deputy Jerome Wilcoxson wrote the memo posted on the bulletin board in an attempt to "encourage harmony and coordination between the deputy sheriffs and management and to increase morale." Doc. 58-14. In contravention of that goal, Zickes wrote Defendant Smith's name beneath the word "target" on the memo and posted an article entitled "*Arrogant Boss? Sit Tight, He'll Get His, Research Shows.*"
[87] *Id*. (citing 370 F.3d at 592-93).

11

Case No.15-CV-1865
Gwin, J.

"[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"[88] Because neither Zickes' sick-time speech nor his bulletin-board speech are of public concern, his claim "must fail."[89]

### iii. Even if Plaintiff could show his speech was of public concern, he has failed to show that the speech caused any adverse employment action caused by Defendants.

Even if Plaintiff could meet the public-concern test, his First Amendment retaliation claim still fails.

First, it is unclear that much of what Plaintiff experienced rises to the level of adverse employment actions. To show an adverse employment action, Zickes "must establish that he has suffered a 'materially adverse' change in the terms or conditions of employment because of the employer's actions."[90] Almost none of the incidents Zickes reports as retaliation involve "materially adverse" change. For example, receiving "oral counseling," being momentarily kept from a grievance hearing before ultimately being allowed to attend, and being reported for improperly using jury rooms but receiving no discipline are not sufficiently adverse employment actions.

Second, Defendants did not cause the acts that may constitute adverse employment actions. For example, Plaintiff Zickes points to the Inspector General's investigation as an adverse employment action. Despite resulting in only a written reprimand, the investigation could be an adverse employment action due to its length and many stages.[91]

---

[88] *Garcetti*, 547 U.S. at 420 (citing *Connick,* 461 U.S. at 154).
[89] *Van Compernoll*, 241 F. App'x at 249 (citing *Garcetti*, 547 U.S. at 418).
[90] *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999) (citing *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)).
[91] *See* Doc. 53 at 5-6 (describing the initial investigation, recommendation to human resources, appeal, and arbitration in the investigation).

12

Case No.15-CV-1865
Gwin, J.

But Defendants are not responsible for this investigation. The Inspector General is an independent entity.[92] And its investigation was triggered by Lucy Rodriguez's complaint, who has been dismissed from this case. Defendant Smith's review of Rogriguez's complaint before she filed does not equate to his responsibility for the initial investigation, let alone its length.

Because Plaintiff Zickes fails to show his speech was of public concern or that Smith caused it to lead to adverse employment actions, his claim fails.

### b. No reasonable juror could find that Plaintiff Zickes was constructively discharged from his employment.

Plaintiff Zickes argues that he was constructively discharged when he retired due to the "stress and emotional toll" of the aforementioned incidents. The record does not support this claim.

To show constructive discharge, Plaintiff Zickes must show that "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit."[93] "[B]oth the employer's intent and the employee's objective feelings must be examined."[94]

Under the first prong of the test, courts ask "[w]hether a reasonable person would have [felt] compelled to resign."[95] This inquiry "depends on the facts of each case, but [courts] consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [female] supervisor; (6) badgering, harassment, or humiliation by the employer

---

[92] Cuyahoga County Code § 204.01 (establishing the Cuyahoga County Inspector General's mission to "investigate fraud, corruption, waste, abuse, misfeasance, malfeasance, and nonfeasance *without interference or pressure from any other Public Official or Employee*") (emphasis added).
[93] *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481–82 (6th Cir. 2012) (quoting *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012)).
[94] *Id.*
[95] *Id.* (citing *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005)).

13

Case No.15-CV-1865
Gwin, J.

calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status."[96]

Of the three prongs of the test, Plaintiff Zickes has shown only that he retired. As discussed above, many if not all of the alleged retaliation incidents in this case do not rise to the level of "adverse employment actions." A reasonable person would not feel compelled to resign because he had to wait for approval of compensatory time until later the *same day* he requested it,[97] or because his shift, along with many other deputies, was altered by one hour.[98]

More importantly, Zickes offers no evidence that presents a genuine dispute of whether Defendants Smith and Carroll intended to create intolerable work conditions. Any actions by Defendants Smith and Carroll appear to be responsive to Plaintiff Zickes' prior actions, such as arriving late to work or eating lunch where he was not permitted to eat.

Accordingly, as a matter of law, Plaintiff Zickes was not constructively discharged.

**B. Defendants Bryan Smith and Michael Carroll are entitled to summary judgment.**

**a. Defendants Smith and Carroll have qualified immunity.**

Defendants Smith and Carroll argue that that Plaintiff's claims also fail because they are entitled to qualified immunity. This Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[99] To determine whether qualified immunity applies, the court looks to whether the plaintiff (1) presents facts that make out a

---

[96] *Id*.
[97] Doc. 52-1 at 212-216, Zickes deposition (recognizing that the County Executive announced, on the day of the storm, that compensatory time for late arrivals would be allowed).
[98] *Id*. at 254 (recognizing that other deputies also had their hours changed).
[99] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

14

Case No.15-CV-1865
Gwin, J.

violation of "a clearly established constitutional right," and if so, (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."

As discussed above, Plaintiff Zickes cannot show a violation of his First Amendment rights. Nor can Zickes show that he was constructively discharged.

Plaintiff Zickes relies on *Kiessel v. Oltersdorf*[100] in arguing that Defendants Smith and Carroll are not entitled to qualified immunity. In *Kiessel*, the defendants retaliated against plaintiffs for writing a letter—published in a newspaper—alleging that defendant sheriffs had been illegally eavesdropping on employees' conversations.[101] The Sixth Circuit found plaintiffs' letter to be of public concern.[102] Therefore, any subsequent retaliation violated plaintiffs' clearly established First Amendment rights, and qualified immunity was unavailable.[103]

The facts in *Kiessel* are markedly different than the facts here. There, plaintiffs alleged that "government officials broke the law," which is a matter of public concern in the Sixth Circuit.[104] Quite differently here, Plaintiff Zickes' speech concerned an internal personnel matter and his personal dissatisfaction with Defendants Smith and Carroll. Zickes' speech was not of public concern. Thus, there is no First Amendment violation. Accordingly, Defendants Smith and Carroll are entitled to qualified immunity, and therefore summary judgment, on both claims.

---

[100] 459 F. App'x 510 (6th Cir. 2012).
[101] *Id*. at 512.
[102] *Id*. at 514.
[103] *Id*. at 515.
[104] *Id*. at 514 (citing *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007); *Lucas v. Monroe County*, 203 F.3d 964, 974 n.5 (6th Cir. 2000); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)).

Case No.15-CV-1865
Gwin, J.

## IV.  CONCLUSION

For the reasons above, this Court **GRANTS** Defendant Smith's motion to exclude testimony**, DENIES** Plaintiff Zickes' motion for summary judgment, and **GRANTS** Defendant Smith's and Defendant Carroll's motions for summary judgment.

IT IS SO ORDERED.


Dated: September 16, 2016                                         *s/        James S. Gwin*
                                                                  JAMES S. GWIN
                                                                  UNITED STATES DISTRICT JUDGE